WESTLAND v. GOLD COIN MINES CO.

(Circuit Court of Appeals, Eighth Circuit. March 19, 1900.)

No. 1,246.

1. MASTER AND SERVANT—INJURY OF SERVANT—SAFE PLACE TO WORK.
    A mining company, which erects a stull or platform across a narrow and dark fissure in its mine, 70 feet from the bottom, on which its employés are required to work, is bound to the exercise of reasonable care to see that the timbers are of adequate strength and number, and securely fastened, to render it a safe place on which to work.

2. SAME—ACTION FOR DEATH OF EMPLOYÉ—QUESTIONS FOR JURY.
    Plaintiff's husband was killed, with other workmen, by the breaking and falling of a stull in defendant's mine, on which he was working in stoping ore 70 feet from the bottom. The stull was erected by defendant by placing lagging on timbers running across a fissure in which it was built, and supported in its sides, and was intended to be of sufficient strength to sustain the weight of 20 feet of earth and rock upon its top, although there was but 9 feet in depth upon it when it broke and fell. *Held*, that the fact of its falling under such circumstances was in itself evidence from which a jury might infer that it had not been properly constructed, and that, when taken in connection with the fact that a number of the cross timbers were broken in the middle, and with the testimony of two competent witnesses, who stated their opinions that the timbers were insufficient in strength or number to carry the load placed upon them, it could not be held, as matter of law, that defendant was not negligent, but the question was one for the jury.

    Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Colorado.

Edmund F. Richardson (Thomas M. Patterson and Horace N. Hawkins, on the brief), for plaintiff in error.

James L. Blair (James A. Seddon and Robert A. Holland, Jr., on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. The question of principal importance which this record presents, and it is the only one which we deem it necessary to consider, is whether the trial court was justified in withdrawing the case from the jury at the conclusion of all the testimony. The action was brought by Ellen A. Westland, the plaintiff in error, to recover damages from the Gold Coin Mines Company, the defendant in error, on account of the death of her husband, Andrew Westland, who was killed on January 12, 1898, while stoping ore for the defendant company in one of its mines in Gilpin county, Colo. The deceased was working at the time of his death about 900 feet beneath the surface of the earth, on a stull that had been erected by the defendant in one of the levels of its mine for the purpose of enabling its employés to stand thereon while breaking down the mineral-bearing rock. The stull that had been so erected fell while the deceased was working thereon, and precipitated him, together with a mass of rock and earth resting thereon, to the floor of the level, a distance of about 70 feet, causing his instant death. Concerning these facts there was no controversy. The complaint charged negligence on the part of the defendant company in that the stull timbers were of insufficient size and strength to sustain the mass of rock and earth which was liable to fall upon it when the miners were engaged in stoping ore; that the stull timbers were also insufficient in number, having been placed too far apart; and that the ends thereof were not properly let into the side walls.

The evidence adduced during the trial tended to the establishment of the following facts: The stull which fell was constructed by the defendant, about six weeks or two months prior to the accident, of ordinary spruce or white pine timber which was grown in the vicinity of the mine. The vein in which the stull was set up varied in width from 2 to 12 feet, and was 10 or 12 feet wide at the place where the accident occurred, and was nearly vertical; having very little dip as it descended into the earth. The stull timbers, at their respective ends, rested in headings in the hanging wall and in hitches in the foot wall, and corresponded very nearly in width with the width of the vein where they happened to be set. The stull timbers where the accident occurred were 10½ feet long according to the estimates of some witnesses, and 12 feet long according to other testimony, and were set from 5 to 6 feet apart, and were from 9 to 12 inches in diameter at the smaller ends. The timbers in question were covered with lagging that was laid lengthwise of the vein, so as to form a flooring to support the ore as it was broken down by blasting. The deceased took no part in erecting the stull which fell, and had little opportunity, prior to the accident, to observe the size of the stull timbers or the manner in which they were placed, as there was no light in the mine other than that made by the candles which the miners carried, and as the floor of the stull was usually covered with a mass of earth or rock, and was about 70 feet above the bottom of the level, so that it could not be inspected from below. On the day of the accident the deceased and his fellow workmen fired a shot about 10 o'clock a. m. which had the effect of loading the stull, taking into account the rock previously broken down, to a depth of about 9 feet. Shortly after

they had returned to the stull to resume work, at 11:45 a. m., the stull fell, while they were standing on it and working in the usual way, carrying with it the deceased and his fellow workmen. The stull was constructed for the purpose of supporting a mass of earth and rock from 18 to 20 feet thick. After the accident three or more of the stull timbers were found, at the bottom of the level, which were broken about in the center. One witness for the plaintiff, who was a practical miner, testified without objection that the lagging gave way on the occasion of the accident because "the stull timber broke." Two other witnesses (one of them being an assistant mining inspector for the bureau of mines of the state of Colorado, and the other a practical miner) expressed the opinion, in substance, that the stull timbers employed in constructing the stull, in view of their length and the space between them, were insufficient to support the weight which the stull was designed to carry. There was some conflict in the testimony with reference to the length and diameter of the timbers that had been used in constructing the stull, and their distance apart. The defendant company offered some testimony which tended to show that the stull in question was constructed in the usual manner, and with timbers of the same kind, size, and strength that were usually employed by mine owners in constructing stulls for stoping purposes in such views as the one where the accident occurred. The defendant also offered some testimony which tended to show that, a day or two preceding the accident, the deceased and his fellow workmen had been cautioned by the foreman of the mine against firing such heavy blasts as they had once fired.

It is obvious, we think, that the defendant company is responsible in damages for the death of the plaintiff's husband, if his death was occasioned by any defect or insufficiency in the stull which might have been avoided by the exercise of ordinary care when the stull was constructed. The defendant caused the structure in question to be erected for the use of its employés in a narrow and dark fissure 900 feet beneath the surface of the earth, expecting that it would be weighted at times with tons of earth and rock, and with knowledge that its fall meant instant death to all who happened to be standing on or underneath the structure. It had provided a place for its employés to work, and it was its duty to make that place safe and secure, in so far as that object could be accomplished by the exercise of reasonable care in providing stull timbers of adequate size and strength, and by placing them sufficiently close together, and by making the proper hitches and headings in the foot and hanging walls, so that the structure would support the weight that it was expected to carry. Moreover, the deceased and his fellow workmen had the right to assume, unless they were advised to the contrary, that these duties of the master had been discharged, that the stull was of sufficient strength to support at least 20 feet of earth and rock, and that the defendant, in constructing it, had exercised a decree of care commensurate with the location of the stull, the character of the work to be done thereon, the weight it would be required to carry, and the dire results that would inevitably follow if it should chance to fall. A rule of law devolving such duties on the master in cases like the one in

hand is so reasonable, just, and humane that we deem it unnecessary to do more than refer to a few of our own decisions in which it has been stated and enforced. Railway Co. v. Jarvi, 10 U. S. App. 439, 3 C. C. A. 433, 53 Fed. 65; Mining Co. v. Ingraham, 36 U. S. App. 1, 17 C. C. A. 71, 70 Fed. 219; Railway Co. v. Jackson, 27 U. S. App. 519, 522, 12 C. C. A. 507, 65 Fed. 48; Manufacturing Co. v. Johnson, 60 U. S. App. 661, 669, 670, 32 C. C. A. 309, 89 Fed. 677, 681.

This leads to the inquiry whether the evidence adduced at the trial was of such a nature as would warrant a jury in drawing the inference that the stull was of insufficient strength, or that it had been improperly constructed, by reason of the failure of the defendant company to exercise a reasonable degree of care and diligence while erecting it; and this question, we think, should be answered in the affirmative. The fact that the stull fell demonstrates that it was insufficient to support the load with which it was burdened at the time it fell. The case in hand, then, is not of that kind of which it may be said that the occurrence of the accident affords no evidence of negligence. If the stull had been constructed as it should have been, it would easily have borne the weight that was, upon it at the time it fell. Hence the fall of the structure suggests forcibly that the stull timbers were insufficient either in strength or number, or that the supports let into the side walls of the vein were insufficient, and that proper care had not been exercised by those who erected it. Barnowski v. Helson, 89 Mich. 523, 50 N. W. 989; Mulcairn's Adm'x v. City of Janesville, 67 Wis. 25, 29 N. W. 565; Bahr v. Lombard, 53 N. J. Law, 233, 21 Atl. 190, 23 Atl. 167. A reasonable person might very well have reached the conclusions last stated by force of the maxim, "Res ipsa loquitur."

Such a conclusion is re-enforced by the evidence, which showed without contradiction that the several broken stull timbers that were found at the bottom of the mine after the accident were broken about in the center, where one would naturally expect them to be broken if the fall of the structure was occasioned because the stull timbers were deficient in strength or number to support the partial load which was upon it when it fell. It must also be borne in mind that two witnesses for the plaintiff, who were fully competent to form a reliable judgment on that subject, expressed the opinion, in substance, that the stull timbers were insufficient to carry the load that the stull was expected and designed to carry. In opposition to the view that it was of insufficient strength, and that some one blundered who was concerned in its erection, we have merely an hypothesis that the deceased and his fellow workmen had fired a blast which was too heavy, and by that means had jarred the stull timbers out of place, so that they did not have a proper bearing on the side walls. This hypothesis may be entitled to some weight, although it appears that the structure did not fall when the last blast was fired, nor for more than an hour thereafter. But what weight should be accorded to the latter hypothesis was clearly a question for the jury, whose province it was to settle all controverted issues of fact, and to draw such inferences from the facts found as they deemed reasonable. In view of the fall of the stull under the

circumstances heretofore detailed, it was also the province of the jury to determine what weight they would give to the testimony of those witnesses who testified, in behalf of the defendant company, that the stull was constructed in the usual manner and with timbers of the usual size and strength. Surely a court would not be authorized, in the light of what happened and all the circumstances of the case, to accept the evidence on that subject as conclusive, and as leaving nothing for the jury to determine. In view of all the evidence which the record contains, we are constrained to hold that the jury might well have concluded that the stull in question was inadequate to support the weight which it was designed to carry, and that its insecurity was due to a want of ordinary care on the part of the defendant company. It is accordingly ordered that the judgment below be reversed, and that the cause be remanded for a new trial.

SANBORN, Circuit Judge (dissenting). The court below was of the opinion that this case disclosed no substantial evidence that the defendant in error was guilty of negligence in the construction of the stull, and a careful reading of the record has led my mind to the same conclusion. Ordinarily the discussion of the sufficiency of the evidence in a case to warrant the submission of an issue of fact to a jury is profitless. But there seems to me to be such a misapplication of a familiar rule of law by the majority of the court in the decision of this case that I am constrained to protest against it. The decision really rests upon the proposition that the fact that the stull fell is in itself sufficient evidence that the fall was caused by negligence of the company in its construction, and that it was not caused by the negligence of the employés in its use, to warrant a verdict against an employer upon that issue. It is said in the opinion of the majority:

"The fact that the stull fell demonstrates that it was insufficient to support the load with which it was burdened at the time it fell. The case in hand, then, is not of that kind wherein it may be said that the occurrence of the accident affords no evidence of negligence. If the stull had been constructed as it should have been, it would easily have borne the weight that was upon it at the time it fell. Hence the fall of the structure suggests forcibly that the stull timbers were insufficient in strength or number, or that the supports let into the side walls of the vein were insufficient, and that proper care had not been exercised by those who erected it. Barnowski v. Helson, 89 Mich. 523, 50 N. W. 989; Mulcairn's Adm'x v. City of Janesville, 67 Wis. 25, 29 N. W. 565; Bahr v. Lombard, 53 N. J. Law, 233, 21 Atl. 190, 23 Atl. 167. A reasonable person might very well have reached the conclusions last stated by force of the maxim, 'Res ipsa loquitur.'"

The portion of the opinion quoted is determinative of the decision, and it seems to me to make a misapplication of the maxim, "Res ipsa loquitur," and to determine the question whether the fall of the stull was caused by a fault in its construction, or by negligence of the workmen in its use, by a presumption which does not really exist. The complaint in the case charged that the fall of the stull was the result of the negligence of the defendant in its construction. The answer denied this charge, and averred that it was caused by the negligence of the plaintiff and his fellow servants in its use. The real issue was whether the fall of the stull was the effect of the use of in-

sufficient stull timbers in its construction, or the effect of the use by the plaintiff and his fellow servants, who were at work upon it, of unnecessarily and unreasonably heavy blasts of powder. Upon the trial the evidence was uncontradicted that the rock and earth upon the stull were only 9 feet deep when it fell; that the stull timbers were not more than 12 feet long; that timbers of the same size, 16 feet long and placed the same distance apart, were supporting rock and earth 20 feet deep in this mine without breaking or difficulty; that the timbers which supported this stull were of the size generally in use to support 20 feet of earth in similar places, and that they were put the usual distance apart and secured in the usual way; that the plaintiff and his fellow workmen on this stull had, on one occasion before, used an excessive amount of powder, and made so heavy a blast that it knocked one end of one of these stull timbers out of its place; that the use of heavy blasts was calculated to break the timbers; that the plaintiff had been cautioned not to use them; and that the weight of 9 feet of rock and earth, which was upon the stull when it fell, could not have broken the stull timbers. None of this evidence was contradicted. The evidence detailed in the opinion of the majority in support of the theory that the accident was caused by the negligence of the defendant was that some of the stull timbers were found broken in the middle, that one witness testified that the lagging gave way because "the stull timber broke," and that two witnesses testified that in their opinion the stull timbers were insufficient to sustain the weight of the 20 feet of rock and earth which they were intended to support. No witness testified, however, that the weight of only 9 feet of rock and earth, the amount on the stull when it fell, could have caused these timbers to break, and the testimony of the defendant's witness to the contrary stands uncontradicted. The breakage of the timbers in the middle has no more tendency to show that the break was' caused by a defect in the timbers than it has to show that it was caused by an excessive blast. That the lagging gave way because "the stull timber broke" was a self-evident fact, since the lagging rested on the stull timbers. But it has no tendency to prove that the break was not caused by an excessive blast, or that it resulted from the insufficiency of the timber to support the 9 feet of rock and earth. Thus it appears that the issue was squarely presented whether the accident was caused by the insufficiency of the timbers to sustain the 9 feet of rock and earth upon them, or by the excessive blasts made by the employés who were at work upon the platform which they made; that there was substantial evidence from which the jury might have inferred that the fall was caused by the excessive blasts, and no substantial evidence that it resulted from the insufficiency of the timbers to sustain the weight of the 9 feet of rock and earth upon them; and that there was no evidence whatever that the defendant knew, or in the exercise of ordinary care could have known, that these timbers were insufficient, or could have anticipated the fatal accident.

The case turns, therefore, upon the proposition of the majority that where a platform, building, structure, or machine furnished by the employer for the employé to work upon, which is in use by his em-

ployé, gives way or falls, and the issue is presented whether the fall was the effect of negligence in its construction or negligence in its use, the mere fact that it fell or gave way constitutes sufficient evidence to warrant a jury in finding that the accident was caused by negligence in its construction, and not by negligence in its use. The proposition finds no support in the cases cited, and is contrary to the general current of the authorities. The cases cited in the opinion of the majority are suits in which an accident occurred in the construction of work which was proceeding under the direct management and superintendence of the defendant. The accidents were unusual, could not have occurred if the defendant had used ordinary care, and no charge was made that they were the result of the negligence of the plaintiffs. In Barnowski v. Helson, 89 Mich. 523, 50 N. W. 989, the defendant was engaged in raising a roof, and it fell because he failed to brace it properly. In Mulcairn's Adm'x v. City of Janesville, 67 Wis. 25, 29 N. W. 565, the city was building a cistern, and its walls fell of their own weight, and on account of the pressure of the earth behind them. There was no charge that their collapse was caused by the negligence of the person injured. In Bahr v. Lombard, 53 N. J. Law, 233, 21 Atl. 190, 23 Atl. 167, the plaintiff, an employé, was injured by an explosion upon the premises of his employer, and the court held that the accident was no evidence of the negligence of defendant, and sustained a nonsuit. In none of these cases was the issue presented whether the accident was caused by the negligence of the employé or by that of the employer. In each of them the defendant was in the active superintendence and use of the structure which caused the damage, and each of the first two is an admitted exception to the general rule that the happening of an accident or injury is neither proof nor evidence that the negligence of any particular person caused it. The rule, "Res ipsa loquitur," applies to cases of injuries to passengers carried under contracts of safe passage, and to some cases where the superintendence of work in progress is in the direct control of the defendant and there is no claim of negligence on the part of the plaintiff. But it never has application to an accident or injury where the question is at issue whether it resulted from the negligence of the employer or the negligence of the employé, and the latter was in the exclusive use and control of the work and the structure at the time of the accident. The reasonable and the true rule is that where injury is caused by the breakage or fall of a platform, building, structure, or machine furnished by the employer and in the exclusive use of the employé, and the issue is presented whether the break or fall was caused by the negligence of the master in its construction or by the carelessness of the employés in its use, the break or fall constitutes no evidence and raises no presumption for or against either cause, but the burden of proof is upon the employé to show, by evidence outside of the break or fall, not only that it was caused by a fault or defect of construction, but also that the employer knew of the fault or defect, or that a person of reasonable care, skill, and prudence would have known of it, from the material used and the method adopted in its construction, and would have anticipated the fatal result which followed. The rule, "Res ipsa loquitur," is inapplicable to

such a case. Peirce v. Kile, 80 Fed. 865, 26 C. C. A. 201, 53 U. S. App. 291; Railroad Co. v. Stewart, 13 Lea, 432, 438; Dobbins v. Brown, 119 N. Y. 188, 194, 23 N. E. 537; Breen v. Cooperage Co., 50 Mo. App. 202, 213, 214; Blanchette v. Manufacturing Co., 143 Mass. 21, 22, 8 N. E. 430; Jones v. Yeager, 2 Dill. 64, 68, Fed Cas. No. 7,510; Mining Co. v. Kitts, 42 Mich. 34, 37, 39, 41, 3 N. W. 240; Early v. Railway Co., 66 Mich. 349, 352, 33 N. W. 813; Sorenson v. Pulp Co., 56 Wis. 338, 341, 344, 14 N. W. 446; Huff v. Austin, 46 Ohio St. 386, 387, 390, 21 N. E. 864; Epperson v. Cable Co. (Mo. Sup.) 50 S. W. 795, 807; Searles v. Railway Co., 101 N. Y. 661, 662, 5 N. E. 66; Smith v. Bank, 99 Mass. 605, 612.

The burden is on the employé to show, not only that the fall was the direct result of the defect of construction, but also that the employer had notice of the defect, or that a person of ordinary care, skill, and prudence would have been aware of it, from the material used and the method adopted in the construction of the stull, and would also have anticipated the fatal result. Dixon v. Telegraph Co. (C. C.) 68 Fed. 630, 632; Railway Co. v. Meyers, 24 U. S. App. 295, 305, 11 C. C. A. 439, 444, 63 Fed. 793, 798; Wood, Mast. & S. (2d Ed.) § 414.

The result is that the fall of the stull constituted no evidence whether the fall was caused by a defect in its construction or by the negligence of the employés in the use of their blasts. There was no other substantial evidence in the case either that the fall was caused by the insufficiency of the stull timbers, or that the defendant knew, or might by the use of reasonable care and foresight have known, that these timbers were not sufficient, or that it or any person in the exercise of ordinary care could have anticipated that the stull would fall on account of any defect or fault in its construction. The judgment below should, therefore, in my opinion, be affirmed.