BAYER *v.* GROCHOLSKI.

MASTER AND SERVANT—RES IPSA LOQUITUR—PERSONAL INJURIES—
QUESTION FOR JURY.

> In an action by a servant to recover damages for personal
> injuries received as the result of the breaking of a scaf-
> folding which had held three men for two hours while
> they were at work on defendant's house and broke when
> plaintiff went on it, also, *held*, that it·was a question for
> the jury whether the scaffold was safe for four men.
> FELLOWS and BROOKE, JJ., dissenting.[1]

Error to Wayne; Withey, J., presiding. Submitted
January 10, 1917. (Docket No. 96.) Decided May
31, 1917. Rehearing denied September 28. 1917.

Case by Casimir Bayer against Stanislaus Grochol-
ski and another for personal injuries. Judgment for
defendants on a directed verdict. Plaintiff brings er-
ror. Reversed.

*William W. MacPherson,* for appellant.

*John H. Dohrman,* for appellee

FELLOWS, J. (*dissenting*). The trial court directed
a verdict for the defendants. Unless we are willing
to apply the rule *res ipsa loquitur* to the extreme limit
of holding that proof of an accident alone is sufficient
proof of negligence to take a case to the jury in an
action brought by a servant against the master for
negligence, the case must be affirmed.

The plaintiff was injured by the falling of a tem-
porary scaffold which had been erected by an inde-
pendent contractor engaged in the repair of defend-
ants' dwelling house, in the city of Detroit. Plaintiff

---

[1] On applicability of maxim *res ipsa loquitur* as between master
and servant to fall of scaffold, see note in 28 L. R. A. (N. S.) 586.

testifies that he was employed by defendant Stanislaus Grocholski to work in reshingling this house, which had been damaged by fire, and that while so employed the scaffold collapsed and he was injured. He gave no proof of the use of defective material in the scaffold or improper or defective construction, or that there was any defect that was discoverable upon inspection. It is not pointed out that there are any circumstances proven in the case from which negligence could be inferred, and we are unable to find any in the record.

We have repeatedly held that negligence may be proven by circumstantial evidence, that the circumstances attending the accident and taken in connection with it may be such as to justify an inference of negligence, but that the circumstances must be such as to take the question beyond the realm of guesses and conjecture. *Redmond* v. *Lumber Co.*, 96 Mich. 545 (55 N. W. 1004); *Alpern* v. *Churchill*, 53 Mich. 607 (19 N. W. 549); *Stern* v. *Railroad Co.*, 76 Mich. 591 (43 N. W. 587); *La Fernier* v. *Wrecking Co.*, 129 Mich. 596 (89 N. W. 353); *Stowell* v. *Standard Oil Co.*, 139 Mich. 18 (102 N. W. 227); *Casterton* v. *American Blower Co.*, 142 Mich. 407 (106 N. W. 61); *Powers* v. *Railroad Co.*, 143 Mich. 379 (106 N. W. 1117); *Sewell* v. *Railway Co.*, 158 Mich. 407 (123 N. W. 2); *Ammer* v. *Postal*, 168 Mich. 405 (134 N. W. 453).

We have also repeatedly held that negligence must be proven, and that the bare fact of the occurrence of the accident is not evidence of negligence sufficient to take the case to the jury. *Early* v. *Railway Co.*, 66 Mich. 349 (33 N. W. 813); *Toomey* v. *Steel Works*, 89 Mich. 249 (50 N. W. 850); *Robinson* v. *Wright & Co.*, 94 Mich. 283 (53 N. W. 938); *Fuller* v. *Railroad Co.*, 141 Mich. 66 (104 N. W. 414); *Renders* v. *Railroad Co.*, 144 Mich. 387 (108 N. W. 368);

*Brown* v. *Bryant,* 166 Mich. 180 (131 N. W. 577);
*Fuller* v. *Dry Goods Co.,* 192 Mich. 477 (158 N. W.
1026). We are not unmindful of what was said by
Mr. Justice MORSE in the prevailing opinion in *Bar-nowsky* v. *Helson,* 89 Mich. 523 (50 N. W. 989, 15
L. R. A. 33). But in that case there was evidence
that the roof was not properly braced, and the opinion
cites the case of *Alpern* v. *Churchill, supra,* to the
effect that negligence may be proven by circumstan-
tial evidence, recognizes the rule that "the mere fact of
an injury does not impute negligence," and must not
be regarded as holding a contrary doctrine to the
cases here cited. *Elsey* v. *J. L. Hudson Co.,* 189 Mich.
135 (155 N. W. 377, L. R. A. 1916B, 1284).

But it is insisted that, conceding the rule to be
that the injury is not of itself evidence of negligence,
such rule should no longer obtain in view of the pro-
visions of the so-called employers' liability act (Act
No. 10, Extra Session 1912, 2 Comp. Laws 1915,
§ 5423 *et seq.*) It is ingeniously argued that the
rule now prevailing is based on the theory that
the accident may have occurred from either of
four causes, (1) through a risk assumed by the ser-
vant, (2) his contributory negligence, (3) that of his
fellow servant, or (4) the negligence of the master,
that it may be a matter of conjecture as to which of
these caused it, and that therefore negligence of the
master rather than the enumerated causes cannot be
presumed to have been the cause—citing *Northern
Pacific R. Co.* v. *Dixon,* 139 Fed. 737 (71 C. C.
A. 555). It is therefore argued that, the defense of
assumed risk, contributory negligence, and the negli-
gence of a fellow servant being no longer available to
the master under the provisions of the employers' lia-
bility act, the reason for the rule fails and the rule
fails with it. We cannot follow plaintiff in this con-
tention; it entirely overlooks the fact that the acci-

dent might result from many other than the enumerated causes; nor do we understand the case cited to bear the construction placed upon it by counsel. Judge Sanborn, who wrote the opinion in that case, very clearly, we think, pointed out that there were many possible causes of accident, and did not attempt to limit them to the causes which are no longer available as a defense under the employers' liability act. He said:

"But the doctrine, '*res ipsa loquitur*,' is inapplicable to cases between master and servant brought to recover damages for negligence, because there are many possible causes of accidents during service, the risk of some of which, such as the negligence of fellow servants and the other ordinary dangers of the work, the servant assumes, while for the risk of others, such as the lack of ordinary care to construct or keep in repair the machinery or place of work, the master is responsible. The mere happening of an accident which injures a servant fails to indicate whether it resulted from one of the causes the risk of which is the servant's, or from one of those the risk of which is the master's; and for this reason it raises no presumption that it was caused by the negligence of the latter. In such cases the burden of proof is always upon him who avers that the negligence of the master caused the accident to establish that fact, and a naked finding, as in this case, that the accident occurred, and that the servant was guilty of no negligence which contributed to cause his injury, is insufficient to sustain this burden, for there are many other causes than the negligence of the master and that of the servant, such as the negligence of fellow servants and latent and undiscoverable defects in place or machinery, which may have produced it."

This court said, speaking through Mr. Justice CHAMPLIN, in *Stern* v. *Railroad Co., supra:*

"We have held that negligence will not be presumed from the mere fact of accident. The fact of accident alone is as consistent with the presumption that it was unavoidable as it is with negligence, and there should

be some evidence that it could have been avoided with proper diligence or precaution; in other words, some evidence of negligence other than the mere fact of accident."

In the case of *Powers* v. *Railroad Co., supra,* it was urged upon this court that, inasmuch as no one witnessed decedent's fall, the presumption of care on his part arose; that the accident occurred from one of two causes, negligence of decedent or negligence of defendant; that the presumption that decedent was in the exercise of due care took the cause out of the realm of conjecture; and that a case was made for the jury. Mr. Justice HOOKER, speaking for the court, said:

"This view takes no account of the fact that a man may suffer an injury without being negligent himself, and where a defendant is not negligent, or where, being negligent, such negligence was in no way the cause of the accident. Grant that in this case a presumption takes the place of proof of due care on the part of the deceased, does it relieve the plaintiff also from the burden of proving, as in other cases, (1) the negligence of defendant, and (2) that the *injury was caused by such negligence?* Upon such a theory the burden of proof, as to both of these facts, is shifted in all cases where the accident is without witnesses, except the injured party, who met death in the accident, and it would follow that many of the cases are wrongly decided; and it would seem that there is no excuse for the enunciation of the doctrine that a case should not go to the jury where a verdict must rest upon a conjecture or guess, a rule which has been iterated and reiterated by many if not most courts, including our own"—citing the cases.

From what we have said it follows that the employers' liability law does not relieve the servant from proving negligence of the master, and that such negligence will not be presumed from the accident alone.

There is no evidence of any circumstances which, taken in connection with the accident, would permit the inference of negligence of defendants. The un-

disputed testimony shows that the work was being performed by an independent contractor who built the scaffold the day before, that no defective material was used by him in erecting the same, and that it was properly constructed. The court below correctly directed a verdict for the defendants.

The judgment should be affirmed, with costs.

BROOKE, J., concurred with FELLOWS, J

OSTRANDER, J. It is, I suppose, the duty of one who constructs a scaffold for the use of his employees to make it safe. If built for the use of one man, and it falls when he goes upon it, the necessary inference is that it was infirm and insufficient for the use for which it was made and to which it was put. If built for the use of three men, and it supports three men, and breaks when a fourth man is set to work upon it, the necessary inference is, no other cause appearing, that the scaffold was not built strong enough to accommodate four men and was overloaded when the fourth man went upon it.

The scaffold in question had held three men during two hours of work; it went down, broke down, when a fourth man was set to work upon it. One of the three men at work upon it protested, if mildly, the introduction of another man, saying that the scaffold would not hold four. It was tendered to the fourth man, the plaintiff, if it was tendered to him at all, by the defendants, as a safe place. I do not think that whether it was safe for four men is conjectural. The testimony for plaintiff tends to prove much more than an accident and resulting injury. Viewed favorably to the plaintiff, the testimony made a case for a jury.

The judgment should be reversed, and a new trial granted, with costs to appellant.

KUHN, C. J., and STONE, BIRD, MOORE, and STEERE, JJ., concurred with OSTRANDER, J.